Upon review of the competent evidence of record and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff alleges that the injury to her pulmonary system began on January 19, 1998 and continued on subsequent dates.
2. At the time of the alleged injury:
 a. The parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
 b. An employment relationship existed between plaintiff and defendant-employer.
 c. Defendant-employer was insured by Cigna Property Casualty.
In addition, the parties stipulated into evidence the following:
1. The documents attached to the Pre-Trial Agreement.
2. Nine additional pages of medical records and reports.
3. Records from Penske Auto Center.
4. Records from TriPoint Ford.
Although the parties at the hearing before the Deputy Commissioner indicated that plaintiffs answers to defendants interrogatories would be stipulated into evidence and would be provided to the Commission, those documents have not been submitted so the stipulation is deemed withdrawn.
The Pre-Trial Agreement dated September 13, 1999, which was submitted by the parties, is incorporated by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was thirty-four years old as of the hearing before the Deputy Commissioner, began working for defendant-employer on September 13, 1996 as an ATM technician. Her job involved driving an armored van to specified ATM machines, servicing them, balancing them and replenishing the cash money. Plaintiff would then take the deposits to the respective banks. Her average weekly wage in 1997 was approximately $511.60.
2. Shortly before Thanksgiving in November 1997, plaintiff went on maternity leave. She was out of work until January 19, 1998 when she reported to Charles Taylor, the area supervisor for the route she would be driving. Mr. Taylor drove plaintiffs assigned van over to pick her up and smoked along the way, so that the van was full of cigarette smoke by the time plaintiff was to get inside. Plaintiff told Mr. Taylor that she was allergic to smoke, so he extinguished his cigarette and helped her fan out the vehicle while the doors were open. Since the van was an armored vehicle, the windows could not be rolled down and, once underway, the only ventilation was through the heating and air conditioning system. Mr. Taylor did not smoke in the van as he showed plaintiff her route, but the odor of cigarette smoke remained in the vehicle and bothered plaintiff.
3. While riding in the van that day, plaintiff also noticed the smell of exhaust. The smell continued once she began driving the van, so plaintiff reported the problem to defendant-employer and took the van to Penske Auto Center (Penske) for repair. On January 24, 1998 the muffler and tail pipe on the van were replaced. There was considerable rust on sections of those parts.
4. Plaintiff claims that the van continued to smell of exhaust and that she experienced breathing problems while driving it. However, the first medical report regarding breathing symptoms was dated April 28, 1998. On that date, plaintiff reported to the Seymour Johnson Air Force Base Clinic with complaints of chest pain and tightness with some shortness of breath which had began that morning. Plaintiff was referred to the emergency room where her blood pressure was found to be significantly elevated. Medication was prescribed for her hypertension. On April 30, plaintiff was seen in follow-up at the base for her hypertensive episode. Apparently in June 1998 plaintiff had a similar episode. According to the June 15, 1998 medical report from Dr. Tuel, plaintiff was seen in the emergency room the previous week for chest pain. Plaintiffs blood pressure was only mildly improved at that time so Dr. Tuel increased the dose of her medication.
5. On June 22, 1998 plaintiff was tested for carbon monoxide in her blood stream due to her reports that she was being exposed to the gas in her van while driving at work. However, the tests results were within normal limits. On May 9 and June 20, 1998 the van was taken to Penske to check for engine smell and for an exhaust leak, and nothing was found. The fleet supervisor with defendant-employer also checked the vehicle and found no problems. The supervisor was unable to detect the odor of which plaintiff complained and, when he obtained a carbon monoxide tester and tested the vehicle, there was a negative reading. When the van was inspected in July 1998, it passed the emissions testing with no modifications. Sometime in June 1998, plaintiff was allowed to start driving a different vehicle. In September 1998 the van she drove until June was taken to the dealer for servicing and to check for leaks which might cause fumes in the cab. No exhaust leaks were found, but the mechanic did identify a coolant leak and a valve cover leak, neither of which would produce a carbon monoxide leak.
6. Dr. Tuel referred plaintiff to Dr. Pape, a pulomonologist in Greenville, for evaluation regarding her pulmonary complaints. Dr. Pape examined plaintiff on October 12, 1998. Plaintiff described exposure to severe fumes and gas in her van with associated symptoms of dyspnea, cough, chest pain, nausea and light headiness, and indicated that her symptoms were improved after the catalytic converter on the van was found to be defective and was replaced. At best, plaintiffs description of her symptoms and the problems with the van was a gross exaggeration; at worst, it was false. Dr. Pape ordered pulmonary function tests to see if plaintiff had signs of significant obstruction. Although plaintiff subsequently underwent the studies, the tests could not be completed due to lack of effort on her part. Dr. Pape then advised plaintiff that he could not adequately assess her condition without valid pulmonary function studies.
7. Plaintiff finally completed the studies in January with completely normal results. Dr. Pape then ordered a methacholine challenge test. He subsequently indicated that the test confirmed that plaintiff had reactive airways disease. However, on May 24, 1999 Dr. Pape noted that plaintiff had very good airflow on examination and that her symptoms were out of proportion to the objective findings. Dr. Pape continued to treat plaintiff with various medications until July 28, 1999 when he referred her back to Dr. Tuel for routine follow-up care since her condition appeared to have stabilized.
8. Plaintiff developed reactive airways disease. However, plaintiff did not prove that she was placed at an increased risk of developing the condition by virtue of her exposure at work as compared to the general public not so employed. Nor was plaintiffs workplace exposure to unknown smells proven to have been a significant contributing factor in the development of her reactive airways disease.
9. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs reactive airways disease was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. 97-53 (13); Booker v. MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. Plaintiff is not entitled to benefits under the Workers Compensation Act for her reactive airways disease. N.C. Gen. Stat. 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim for workers compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of April 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb